1

2

3

4

5

6

7

8

9

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | BLAZEFRAME INDUSTRIES, LTD.,

11 |               Plaintiff,

12 |       v.

13 | CALIFORNIA EXPANDED METAL
    PRODUCTS CO.,
14

15 |               Defendant.

CASE NO. C12-1922 RAJ

ORDER

16      This matter comes before the court on defendant California Expanded Metal

17 Products Co.'s ("CEMCO") motion to transfer venue.[1]  Dkt. # 12.  CEMCO argues that

18 this patent infringement case could have been initiated in the Central District of

19 California and that the convenience of parties and witnesses and interest of justice

20 warrant transfer.  Plaintiff BlazeFrame Industries, Ltd. ("BlazeFrame") argues that the

21 convenience of the parties and witnesses and interest of justice do not favor transfer.

22 Dkt. # 18.

23      The district court has discretion to adjudicate motions to transfer according to an

24 individualized case-by-case consideration of convenience and fairness under 28 U.S.C. §

25

26

27

[1] This motion may be decided on the papers submitted.  Accordingly, the parties' request
for oral argument is DENIED.

ORDER- 1

1    1404(b).  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section

2    1404(a) requires that (1) the district to which defendant seeks to have the action

3    transferred is one in which the action might have been brought, and (2) the transfer be for

4    the convenience of the parties and witnesses and in the interest of justice.  28 U.S.C. §

5    1404(a).  Plaintiff does not dispute that this case could have been brought in California.

6    Rather, it argues that the interests of the parties, witnesses and justice do not favor

7    transfer.

8         In determining whether the interests of the parties, witnesses and justice favors

9    transfer, courts must weigh multiple factors in its determination whether transfer is

10   appropriate in a particular case.  *Jones*, 211 F.3d at 498.  The court may consider the

11   eight private and public interest factors:  (1) the location where the relevant agreements

12   were negotiated and executed; (2) the state that is most familiar with the governing law;

13   (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5)

14   the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

15   differences in the costs of litigation in the two forums; (7) the availability of compulsory

16   process to compel attendance; and (8) the ease of access to sources of proof.  *Id.* at 498-

17   99.  The court may also consider court congestion, pendency of related litigation in the

18   transferee forum and the public's interest in adjudicating the controversy in the chosen

19   forum.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

20   1986).  "Because these factors cannot be mechanically applied to all types of cases, they

21   shall be considered here under the statutory requirements of convenience of witnesses,

22   convenience of parties, and the interests of justice."  *Amazon.com v. Cendant Corp.*, 404

23   F. Supp. 2d 1256, 1259 (W.D. Wash. 2005).

24   **A.  Convenience of the Parties**

25        A plaintiff's choice of forum is entitled to greater deference when a plaintiff

26   chooses its home forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

27   BlazeFrame is undisputably a resident of this District.  Dkt. # 16 (Klein Decl.) ¶ 2.

1  However, in patent infringement cases, the preferred forum is that which is the center of

2  gravity of the accused activity. *Amazon.com*, 404 F. Supp. at 1260. "The district court

3  ought to be as close as possible to the milieu of the infringing device and the hub of

4  activity centered around its production." *Id.* (internal quotes omitted); *see also In re*

5  *Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the

6  bulk of the relevant evidence usually comes from the accused infringer. Consequently,

7  the place where the defendant's documents are kept weighs in favor of transfer to that

8  location."). Although the inventor of the three patents at issue resides in Washington

9  (Dkt. # 16 (Klein Decl.) ¶ 1)), all manufacturing of the accused products takes place at

10 CEMCO's facilities in the City of Industry and Pittsburgh, California (Dkt. # 13

11 (Poliquin Decl.) ¶ 28). Additionally, all of CEMCO's patent-related decisions and all

12 documents concerning the sale and importation of the accused products are located in the

13 City of Industry.[2] Dkt. # 13 (Poliquin Decl.) ¶¶ 10, 26. Accordingly, the center of

14 gravity of the infringing devices is the Central District of California.

15     However, the court may not transfer a case simply to shift the burden from one

16 party to another. *See Decker Coal*, 805 F.2d at 843. Both parties assert that litigation in

17 the less-favored forum would create significant financial burdens. The only evidence

18 before the court with respect to the financial solvency of the parties is the Klein

19 declaration. Mr. Klein asserts that BlazeFrame has average annual gross revenues of $1.2

20 to $1.3 million dollars over the past three years, and estimates that CEMCO has annual

21 revenues greater than $100,000,000. Dkt. # 16 (Klein Decl.) ¶ 13. Although CEMCO

22

23

24     [2] BlazeFrame argues that CEMCO misstated that all documents are located in the Central
District of California. However, BlazeFrame misreads CEMCO's arguments. CEMCO has
25 argued (and presented evidence) that all documents *related to the accused products* and/or all
*CEMCO* documents are located in California. These facts are undisputed. The court
26 acknowledges that BlazeFrame's documents related to the patents are in Washington. However,
it is the location of the infringing products and documents related to the infringing products that
27 are most relevant.

1  complains that the $100,000,000 is annual revenue instead of profit, it has not provided

2  the court with any additional information of its annual gross revenue so that the court can

3  make a fair comparison.  Given the only evidence before the court, the court notes that it

4  appears that CEMCO is better able to absorb the financial burden of litigating in

5  Washington.

6       BlazeFrame also argues that the Patent License Agreement (the "Agreement") that

7  is the subject of the case in California[3] has a forum selection clause that allows this case

8  to be litigated in Washington.  BlazeFrame concedes that the Agreement is between

9  CEMCO and Klein, but argues that it is the assignee of the patents covering Klein's later

10 inventions.  The Agreement provides:  "Any dispute arising out of or relating to the terms

11 of this Agreement, *or to the patents subject to this Agreement*, including whether a

12 product is covered by the Licenses granted herein, will be resolved in accordance with

13 the procedures specified in this section, which shall be the sole and exclusive procedure

14 for the resolution of any such disputes." Dkt. # 12-1 at 6, § 9.1 (emphasis added).  The

15 Agreement also provides that if a dispute remains unresolved after specified procedures

16 for dispute resolution, either party may initiate legal proceedings.  *Id.* § 9.4.  "If initiated

17 by KLEIN, then the legal proceedings may take place in the state of Washington.  If

18 initiated by CEMCO, then the legal proceedings may take place in the state of California.

19 Each Party agrees to submit to the jurisdiction of Washington and California."  *Id.*

20 Finally, the Agreement provides that it "may not be amended or modified except by a

21 written instrument signed by all the Parties" and that it "shall be governed by, and

22 construed in accordance with, the laws of the State of California."  *Id.* at 7-8, §§ 12.1,

23 12.2.

24

25

26 _____

27       [3] *CEMCO v. Clarkwestern Dietrich Bldg. Sys. LLC*, Case No. C12-10791 DDP-MRW.

ORDER- 4

1    Here, the forum selection provision is permissive, not mandatory.  *See Hunt*

2 *Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).  Thus, the forum

3 selection clause does not mandate a particular venue.[4]

4    The court finds that, on balance, the convenience of the parties slightly weighs in

5 favor of transfer.

6 **B.  Convenience of the Witnesses**

7    The relative convenience of the witnesses is often recognized as the most

8 important factor to be considered in ruling on a section 1404 motion.  *Data Retrieval*

9 *Tech, LLC v. Sybase, Inc.*, Case No. C08-1702 RSM, 2009 WL 960681, *4 (W.D. Wash.

10 2009).  When considering the convenience of the witnesses, the convenience of non-party

11 witnesses is the more important factor.  *Amazon.com*, 404 F. Supp. 2d at 1260.  The court

12 should consider how many witnesses each side may have and the relative importance of

13 their testimony.  *Id.*; *see Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir.

14 1984) (noting that the court should have "examined the materiality and importance of the

15 anticipated witnesses' testimony and then determined their accessibility and convenience

16 to the forum.").

17    BlazeFrame has identified two non-party witnesses who reside in Auburn,

18 Washington and who observed Klein's research and development activities.  Dkt. # 16

19 (Klein Decl.) ¶ 10.  BlazeFrame also identifies Klein, Klein's patent attorney,[5] and a

20 Director of BlazeFrame as witnesses who reside in Washington State.  *Id.*  Klein, as the

21

22    [4] The court also notes that Klein did not file this case.  The court has disregarded counsel
for plaintiff's supplemental declaration.  He has made various arguments, rather than provide
23 facts of which he has personal knowledge, in an apparent attempt to circumvent this District's
local civil rules regarding surreply briefs.  The parties have not adequately briefed whether
24 federal or state law governs the assignability of patent licenses (*see e.g.*, *In re CFLC, Inc.*, 89
25 F.3d 673 (9th Cir. 2002)), and the court need not decide this issue for purposes of this motion.
    [5] The court notes that BlazeFrame has not provided the court with any understanding of
26 the nature of the testimony by the patent attorney outside of its assertion that he "is also a
potential witness, particularly in light of CEMCO's unfounded assertion of inequitable conduct
27 counterclaims."  Dkt. # 18 (Opp'n) at 16.

1    owner of BlazeFrame, and the Director are party witnesses.  Although Klein's testimony,

2    as the owner of BlazeFrame and inventor of the patents-in-suit, is material and important

3    to BlazeFrame's patent infringement and tortious interference claims, it is unclear to the

4    court whether the Director's testimony is material and important.[6]  BlazeFrame has also

5    failed to provide the court with an understanding of whether the two non-party witnesses

6    would voluntarily appear in California.[7]  *See Jones*, 211 F.3d at 499 (on motion to

7    transfer venue, court may consider, *inter alia*, "the availability of compulsory process to

8    compel attendance of unwilling non-party witnesses").  Nevertheless, given that CEMCO

9    is challenging, *inter alia*, whether Klein is the true inventor, or at least the sole inventor,

10   of the patents-in-issue (*see* Dkt. # 13 (Poliquin Decl.) ¶ 13), it appears that the testimony

11   of the two non-party witnesses who "observed [his] research and development activities"

12   likely will be material and important.

13        In contrast, CEMCO has identified fourteen party witnesses, but no non-party

14   witnesses.  Dkt. # 13 (Poliquin Decl.) ¶¶ 12-25.  Twelve[8] of these party witnesses will

15   likely testify regarding material and important issues, including the history, development

16   and technical aspects of CEMCO's accused products, CEMCO's counterclaims,[9] and

17   CEMCO's affirmative defenses.  However, it appears that at least some of the testimony

18   identified is duplicative.  For instance, Poliquin, as CEO, and Porter, as Executive Vice

19   President, appear to offer overlapping testimony regarding the products at issue in this

20   _____

21        [6] Klein indicates that the Director "helps run the company, and spearheaded negotiations

22   with CEMCO, including [the] effort at mediation."  Dkt. # 16 (Klein Decl.) ¶ 10.  Without
     additional information, the court cannot determine the materiality and importance of the

23   Director's testimony to BlazeFrame's patent infringement and tortious interference claims.
          [7] BlazeFrame represents that they were "among the only eyewitnesses to Klein's

24   inventive process."  Dkt. # 18 (Opp'n) at 16.
          [8] Raymond Poliquin, Fernando Sesma, Wes Westmoreland, Todd McCrite, Rob

25   Forsberg, Don Pilz, Georgi Hall, Tom Porter, Richard Poliquin, Don Banta, Eric Larson and

26   Steve Farkas.
          [9] CEMCO requests declaratory relief in its counterclaim for non-infringement, invalidity

27   and unenforceability of the '293, '314 and '718 patents.  Dkt. # 10 at 16-22.

1   case and the licensing agreement with Klein.  Additionally, CEMCO offers the testimony

2   of the General Sales Manager, Northern Regional Sales Manager, and Regional Sales

3   Manager.  While the scope of the testimony offered appears to be different for these

4   individuals, given CEMCO's recognition of the importance of judicial efficiency, the

5   court believes that CEMCO could streamline its witnesses.  Additionally, two witnesses

6   (Rosemary Garcia and Diane Force) are custodian of records and are only important for

7   admissibility of the various records.[10]  Accordingly, the court believes that CEMCO can

8   present its case with ten of its identified purported witnesses to eliminate duplicative

9   testimony.

10       Although the convenience of non-party witnesses is more important, the court

11   cannot simply ignore the party witnesses.  Given the number of witnesses on each side

12   (five for BlazeFrame and ten for CEMCO), the materiality and importance of their

13   testimony to the claims and defenses, and the inconvenience to BlazeFrame's three non-

14   party witnesses, the court finds that this factor weighs in favor of transfer.

15   **C.  Interest of Justice**

16       The interest of justice factor is perhaps the most important.  *Amazon.com*, 404 F.

17   Supp. 2d at 1261.  In considering the interest of justice, the court weighs such factors as

18   ensuring speedy trials, trying related litigation together, and having a judge who is

19   familiar with the applicable law try the case.  *Id.*

20       Plaintiff has provided the court with the 2011 Federal Court Management

21   Statistics, arguing that this District appears to progress to resolution faster in this court

22   than in the Central District of California.  Dkt. # 19 (Beattie Decl.) ¶ 7, Ex. 1.  However,

23   the statistics as to the speedier disposition or speedier trial offered in Washington is

24   illusory.  The statistics do not reflect this court's significant case load, as evidenced by

25

26       [10] The court notes that parties routinely stipulate to the admissibility of business records
     and/or establish foundation and admissibility during deposition, and thus, these two witnesses
27   likely are not material to the merits of the case.

1  this court's order, some six months after CEMCO filed the motion to transfer venue.

2  Additionally, in the court's experience, it takes much longer than one year just to arrive at

3  a *Markman* hearing.  Accordingly, the factor of avoiding court congestion is neutral.

4      Additionally, since patent infringement claims are governed by federal law, this

5  District is in no better position than the Central District of California in applying the

6  applicable law and deciding this case.[11]  The court also notes that both Washington and

7  California have a strong interest in litigation between these companies where CEMCO is

8  located in California and BlazeFrame is located in Washington.

9      Lastly, the pendency of related actions in the transferee forum is a significant

10  factor in considering the interest of justice factor.  *Amazon.com*, 404 F. Supp. 2d at 1261.

11  Litigation of related claims in the same tribunal is strongly favored because it facilitates

12  efficient, economical and expeditious pre-trial proceedings and discovery, and avoids

13  duplicitous litigation and inconsistent results.  *Id.*

14      BlazeFrame argues that under the first-to-file rule, both cases should be heard in

15  the Western District of Washington.  The first-to-file rule may be invoked when an action

16  involving substantially the same parties and issues has already been filed in another

17  district.  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); *Nakash*

18  *v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  It is true that this case was filed less

19  than two months before the California case.  However, CEMCO is the only party in

20  common between the cases,[12] and there are substantially different legal issues in the two

21  cases.  In California, CEMCO sued Klein and Clark Western Dietrich Building Systems

22  LLC for breach of contract, breach of covenant of good faith and fair dealing, inducing

23

24  _____

25      [11] To the extent the Agreement would require application of California law to the tortious
     interference claim, the Central District of California is more familiar with California state law
26  than is this court.
         [12] The court recognizes that although Klein is not a named party in this litigation, he is
27  the owner of BlazeFrame.

ORDER- 8

1  breach of contract, and tortious interference with contractual relations and business

2  expectancy under California state law.  Dkt. # 21 (Ex. 1 to Trojan Decl. iso Reply), FAC.

3  Here, BlazeFrame sued CEMCO for patent infringement and tortious interference with

4  business expectancies.  Although the tortious interference claims are present in both

5  cases, the patent infringement claims predominate in this case.  *See* Dkt. # 1 (Compl.) ¶¶

6  7-33 (three patent infringement claims), ¶¶ 34-39 (tortious interference claim).

7  Accordingly, the first-to-file rule is not applicable here.

8      Nevertheless, the court is persuaded that the cases share at least some

9  commonalities.  In addition to the tortious interference claim, the Agreement is central to

10 the state law claims in California, and relevant to at least one (out of twenty-nine)

11 affirmative defenses here.  Thus, the court finds that judicial economy also slightly

12 weighs in favor of transfer.

13 **D.  Balance of Factors**

14     The court finds that on balance, although close, CEMCO has met its burden of

15 showing that the convenience of the parties, the convenience of the witnesses, and the

16 interests of justice favor transfer to California.  28 U.S.C. § 1404.

17 **E.  Conclusion**

18     For all the foregoing reasons, the court GRANTS defendant's motion to transfer

19 venue.  Dkt. # 12.  The Clerk is DIRECTED to transfer this case to the United States

20 District Court, Central District of California, and to terminate all pending motions,

21 without prejudice to their re-filing.

22     Dated this 6th day of June, 2013.

23

24

25

26     The Honorable Richard A. Jones
       United States District Judge

27